MAYER STERN, Respondent, *v.* MARY M. O'CONNELL, Administratrix, &c., of Richard O'Connell, deceased, Appellant.

By the Code, as it existed in 1859, a notice of *lis pendens* might be filed before the service of the summons or complaint upon the defendant in the action. The filing of the complaint was then the period at or after which the notice might be filed.

A. commenced an action to foreclose a mortgage on the 23d day of July, 1859, and at 12½ P. M. of that day filed his summons and complaint and notice of *lis pendens* in the clerk's office of Albany county. Copies of the summons and complaint were delivered to the sheriff, within an hour thereafter, for service upon the defendant, and were actually served on the 25th day of the same month. B. made a loan to the defendant and received a mortgage on the same premises, on the same 23d day of July, between the hours of 2 and 4 P. M., and the same was put upon record at 5 o'clock of that day.

*Held*, that B. could not maintain an action for a foreclosure of his mortgage against a purchaser under the foreclosure of A.'s mortgage, but that the lien of B.'s mortgage was cut off and barred by the filing of the notice of *lis pendens* in the action commenced by A.

APPEAL from the Supreme Court, third district. The action is for the foreclosure of a mortgage on premises in the city of Albany, made by Matthew O'Reilly to the plaintiff, upon which $700 was advanced on the 23d day of July, 1859, after two o'clock P. M., and recorded at five o'clock P. M. on the same day.

Prior to the advance of this money, and the recording of the said mortgage, and on the same day, Franklin Edson and others as plaintiffs *filed a complaint and notice of the pendency of an action*, affecting the title to the same premises upon which they claimed an equitable lien on account of money fraudulently received by Matthew O'Reilly belonging to them and invested in the said premises, in which action the said Edson and others were plaintiffs and the said O'Reilly and his wife were defendants. A judgment was recovered in that action by Edson and others against O'Reilly and his wife, adjudging that those plaintiffs had an equitable lien upon the said premises for the sum of nine hundred dollars and interest from the day of filing the said notice, and directing a sale of the said premises in case the said sum was not paid by Sept. 1, 1860.

The summons and complaint in the last mentioned action were delivered to the sheriff for service on the 23d day of July, 1859, prior to the advance of the money by the plaintiff, Stern, to the said O'Reilly, and before the recording of his mortgage, but were not served until two days afterward. The premises were sold under the judgment of Edson and others, October 4th, 1860, and Richard O'Connell, the defendant's intestate, became the purchaser, at the price of $1,335, and on the same day obtained a deed of conveyance from the sheriff, which was recorded on the sixth of October.

At the sale, public notice was given on behalf of the plaintiff, Stern, of his mortgage and the time of its record, which he claimed to be a prior lien to that of the judgment of Edson and others, and that the purchaser would take subject to his mortgage. The plaintiff in this action had no actual knowledge of the claim of Edson and others, nor of the notice filed by them at the time he advanced the money to O'Reilly and took his mortgage. Judgment of foreclosure and sale were entered upon this report, whereby the lien of the mortgage was held to have priority over the title acquired by Richard O'Connell under the prior sale to him by virtue of the judgment of Edson and others; and this judgment was affirmed at the General Term.

*Samuel Hand,* for the appellant.

*John H. Reynolds,* for the respondent.

HUNT, J. This is an action to foreclose a mortgage executed by Matthew O'Reilly and wife to the plaintiff on the 23d day of July, 1859. The defendant claims that the mortgage is no lien upon the premises described, on the ground that the lien of the mortgage was cut off and is barred, by the filing of a notice of *lis pendens,* in an action commenced by one Edson, for the foreclosure of a prior mortgage, and a decree of sale and a purchase by the defendant's intestate under such decree.

The plaintiff received his mortgage on the 23d day of July, 1859, between the hours of two and four o'clock P. M.,

and the same was put upon record at five o'clock P. M. of that day.

In the Edson suit, the summons and complaint, together with a notice of pendency of the suit, were filed on the same day, at 12½ P. M., in the clerk's office of Albany county, and copies of the same were delivered to the sheriff for service, within an hour thereafter. They were actually served on the defendant on the 25th day of July, 1859. If the notice of pendency was legally filed, before the service of summons, then the plaintiff is to be deemed a subsequent purchaser, his claim is barred by the foreclosure of the Edson mortgage, the defendant's intestate obtained a perfect title under the Edson foreclosure, and the present action cannot be maintained. If it was not legally so filed, then the plaintiff's mortgage is a lien and the present action is maintainable.

The court below were of the opinion that the notice of pendency could not be filed until the summons had been served, that the plaintiff was not foreclosed by the proceedings in the Edson suit, and that his mortgage was a lien upon the premises.

Originally, and prior to the passage of any statute, the pendency of an action in equity was, of itself, notice to all parties who had any interest in it, or in the subject matter of the controversy. (*Hayden* v. *Bachlin*, 9 Paige, 513.)

The statute of 1823 (p. 213, § 11) provided that the filing of such bill should not be deemed constructive notice, unless the complainant should file a notice with the clerk of the county in which the land should be situated, containing certain statements, which were pointed out. The time of such filing was not prescribed.

The next enactment of which I am aware, upon this subject, is in the Revised Statutes, and is as follows (1 R. S., 174, § 43): "To render the filing of a bill in chancery constructive notice to a purchaser of real estate, it shall be the duty of the complainant to file with the clerk of the county in which the lands to be affected by such constructive notice are situated, a notice of the pendency of such suit in chancery, setting forth the title," &c.

Actions in the Court of Chancery were at this time commenced by the filing of a bill of complaint with the register or clerk, the issuing of a *subpœna ad respondendum*, and the service of the same upon the defendant. In certain cases, where the defendant was absent from the State, or had absconded, it was provided that the action might be commenced by publication, under the order of the court. (1 R. S., *supra,* 9 Paige, *supra.*)

By the Code of 1848 all former modes of practice were abolished, the distinction between proceedings in chancery and in courts of law was declared to be at an end (§§ 69, 106), and all actions were to be commenced by the service of a copy of the summons and complaint. It was also provided by section 111, that "in an action affecting the title to real property, the plaintiff, at any time after the commencement thereof, may file with the clerk of each county in which the property is situated, a notice of the pendency of the action, containing," &c.

Except for the purpose of saving the running of the statute of limitations, an action was not deemed to be commenced, until the service of the summons upon the defendant. (§§ 106, 79.)

In 1849 the Code was amended by providing that actions might be commenced by the service of a summons; that the complaint need not be served at the same time, but that the summons might contain a notice where it would be filed at a future day. (§§ 127, 128, 130.) It also provided that, "in an action affecting the title to real property, the plaintiff, at the time of commencing the action, or at any time afterward, may file with the clerk of the county a notice of the pendency of suit," &c. (§ 132.)

Section 79 of the Code of 1848 was made § 99 of the Code of 1849, and was amended in one particular, which, it is claimed, gives aid in ascertaining the result we are endeavoring to reach. By the Code of 1848, this section provided that, for the purpose of saving the running of the statute of limitations, an action should not be deemed to be commenced, unless it appeared that the summons was delivered to the

sheriff, with intent that it be actually served. By § 99 of the Code of 1849, it was provided that an action shall be deemed commenced, for all purposes, at the time the complaint is verified, provided that the summons be delivered to the sheriff within the next five days, and be followed by actual service thereof on the defendants.

In 1851 the Code was again amended in two particulars, affecting the construction of the present statute. First, it restored the former provision that an attempt to serve a summons was to be deemed the commencement of an action, for the purpose only of avoiding the running of the statute, and not for other purposes, as was provided by the Code of 1849. (§ 99.) Secondly, it provided that, in an action affecting the title to real property, the plaintiff, at the time of filing the complaint, might file a notice of pendency (§ 132), while, in each of the former Codes, the language used was, that the notice might be filed at the time of commencing the action.

In 1858 this section (132) was again amended by adding to it the words, "and any person whose conveyance or incumbrance is subsequently executed or subsequently recorded, shall be deemed a subsequent purchaser or incumbrancer, and shall be bound by all proceedings taken after the filing of such notice, to the same extent as if he were a party to the action." (Laws of 1858, pp. 491, 492.)

This reference to the statute shows a clear understanding on the part of the legislature of what they were doing, and of the effect of their enactments.

The Revised Statutes did not specify whether the notice could be filed before the service of the *sub. ad resp.*, but said, by implication, that it must be after the filing of the bill. This was a restriction upon the former practice. (9 Paige, *supra*.) The Code of 1848 provided that the notice of pendency might be filed at any time after the commencement of the action, and provided that an action could only be commenced by the service of summons upon the defendant. The Code of 1849 provided that the notice might be filed at the time of the commencement of the action, or at any time afterward, and provided, further, that an action should be

deemed to be commenced when the summons should be placed in the hands of the sheriff for service. It is specified in the Code of 1848, and in that of 1849, in the same identical language, that the time of filing the notice is to be governed by the commencement of the action. But, in the enactment of 1851, different words were used, as indicating the period, to wit: " The filing of the complaint." So marked a change cannot be disregarded, especially when it corresponds with that other provision of the Code enacted at the same time, that the filing of the complaint and the service of the summons may be at different times, and that the complaint might be filed before the process was served, or after, at the choice of the plaintiff.

It is evident that the legislature intended to prescribe a different time, or a different occurrence, as the regulating point for filing the notice. The commencement of the action was a period distinct and easily ascertained, and, in the amendments prior to 1851, as well as in that act itself, they leave no room for doubt as to what shall be the point of time at which an action is to be deemed commenced. The legislature then make new provisions respecting the filing of a complaint, and say that the time for filing the notice of pendency shall thereafter be governed by the time of such filing of the complaint, and in legal effect, instead of the time of commencing the action. This was also a simple distinct period, easily ascertained, and might fairly commend itself to the preference of the legislature. I think no sound rule of construction would justify us in giving to the language any other than its plain and evident meaning. The provision already quoted, from the amendment of 1858, is important, as defining the precise position of the subsequent purchaser or incumbrancer. Every person receiving or recording his conveyance, after the filing of such notice, is deemed a subsequent purchaser or incumbrancer; he stands in the same position as if he had actually purchased the land, or actually received his incumbrance, after the filing of such notice, whatever the fact may be, and he is bound by such proceedings to the same extent as if he were a party to the action; that is, he is entirely

foreclosed and barred of all rights in the subject matter of the controversy.

All future questions upon the point under consideration are disposed of by the amendment to section 132, made in 1862, which enacts that, for the purposes of this section, an action shall be deemed to be pending from the time of filing such notice. The question before us is, however, none the less important to the parties concerned, and I have, therefore, given it a careful consideration.

The judgment should be reversed.

LEONARD, J. The main question in this case is, whether the notice of the pendency of an action affecting the title of the said premises was well filed before the service of the summons in the action of Edson and others against O'Reilly so as to reduce the lien of the plaintiff's mortgage to that of a subsequent incumbrancer.

At the time of the commencement of that action the Code provided that, "In an action affecting the title to real property, the plaintiff at the time of filing the complaint, or at any time afterward, or whenever a warrant of attachment, &c., shall be issued, &c., may file, &c., a notice of the pendency of the action, &c. From the time of filing only shall the pendency of the action be constructive notice to a purchaser or incumbrancer of the property affected thereby, and every person whose conveyance or incumbrance is subsequently executed, or subsequently recorded, shall be deemed a subsequent purchaser or incumbrancer, and shall be bound by all proceedings taken after the filing of such notice to the same extent as if he were made a party to the action."

§ 132. The time when the notice may be filed is not prior to the filing of the complaint. It is distinctly declared that it may be done at that time. The Code, however, does not direct the filing of the complaint at any time, except in the case of service of the summons by publication under section 135. In all other cases, the time of filing the complaint was at the discretion of the plaintiff or his attorney until ten days after service of the summons, when, on proof of the omission, the

adverse party can, by an *ex parte* order, compel it to be filed in a specified time, or that the action be deemed abandoned.

§ 416. This section, taken literally, permits the same discretion, as to the time of filing the notice, which is allowed in respect to filing the complaint, for the purpose of effecting a lien on real estate.

It is insisted that the notice cannot be filed until after the commencement of an action by the service of a summons, and such has been the practice sanctioned by the Supreme Court in several reported cases. It is said in those cases that it is inconsistent that a notice of the pendency of an action should be filed when no action exists—that is, that no action is actually pending because the summons has not been served. The same practice adopted in the case of Edson was pursued, substantially, prior to the Code.

This notice was then called a *lis pendens*. It was regular practice then to file it before the service of a subpœna for the commencement of an action in the late Court of Chancery; but the subpœna could not regularly be issued until the bill or complaint had been filed.

No inconsistency was then ever suggested as having arisen from the filing of a *lis pendens*, containing the same notice in substance, before the subpœna was served or the action commenced. Although it is now called, in the Code, a notice of the pendency of an action, its contents do not necessarily state that an action is pending, or has been previously commenced. The notice is required to state only the names of the parties, the object of the action, and a description of the property affected. There is nothing in the contents of the notice at all inconsistent with the future commencement of the action. The apparent inconsistency relates only to the name of the notice. It is apparent, I think, that the legislature had in view, when this provision of the Code was adopted, the practice previously existing in the late Court of Chancery, and that the intention was to continue it.

When a person, about to become a purchaser or incumbrancer, should search the records, the notice would be found on file, and the complaint being there also, he would be

enabled to learn the nature of the demand supposed to affect the title, and of which notice was given to all concerned.

There is nothing in the reading of the 132d section, as it existed in 1859, requiring it to be held that the complaint and notice could not be filed until the summons had been served; nothing from which an intention to repeal the prior practice prevailing in the late Court of Chancery can or ought, in my judgment, to be inferred. At the first adoption of the Code, this provision authorized the notice to be filed "at any time after the commencement of the action." It was changed in 1851, so as to permit it to be filed at the time of filing the complaint, and the former restriction to the time of commencing the action was stricken out. Thus it remained in 1859, when the action of Edson and others, under which O'Connell acquired his title, was commenced.

The question is of no importance, except so far as the parties to this appeal are concerned, as the legislature have since removed all question by an amendment of section 132, declaring that an action shall be deemed commenced, for the purposes of that section, when the notice is filed, if the summons is actually served within sixty days thereafter.

I am unable to perceive any sufficient reason for holding that the section in question did not mean, as it distinctly read in 1859, that the notice may be filed at the time of filing the complaint, and that the only restriction upon filing the notice is, that the complaint must also be filed.

Great inconvenience might result from restricting a party so that the notice could not have been filed till after the service of summons. The parties defendant might never be fixed so that an amendment of the complaint in this respect would not be required to bring in new purchasers or incumbrancers, created, perhaps, for the express purpose of embarrassing the prosecution of an action.

The judgment ought to be reversed as to the appellant, and judgment rendered declaring the priority of the title of Richard O'Connell, with costs.

Judgment accordingly.