NANCY M. CARPENTER *v.* WILLIAM P. OTTLEY and MILTON H. OTTLEY.

(GENERAL TERM, SEVENTH DISTRICT, SEPTEMBER, 1870.)

In an action of trespass, for entering and cutting standing timber, the defendant may interpose, as a defence, a right as the equitable owner of the timber.

A deed of timbered land, with covenants against the grantor's acts, was made and delivered to the plaintiff, who paid for the land only, and promised, without writing, to convey the timber with the right to enter and cut the same to one with whom the grantor had an unwritten contract for its sale, and who afterward paid the latter for the same.—*Held,* that the grantor's vendee of the timber was the equitable owner thereof, and was not liable to the plaintiff, who had refused performance of the unwritten promise, for entering under such promise and cutting the timber.

The plaintiff having acted by an agent, in negotiating the purchase and in taking the conveyance,—*Held,* that the arrangements made by such agent, upon delivery of the deed and after the contract of sale for the taking of the timber, were adopted by the plaintiff on acceptance of the deed, and became part of the *res gestœ.*

*Held,* further, that evidence of the agreement in respect to reservation of the timber, and for its conveyance by the plaintiff, did not tend to vary or contradict the covenants of the deed.

And that the plaintiff was estopped from setting up the statute of frauds.

THIS was an appeal from a judgment entered on the report of a referee.

The action was brought to recover damages for an alleged trespass upon the plaintiff's premises. On the trial certain evidence was admitted under objection by the plaintiff and her exception, to show an agreement, on the part of the plaintiff's agent, who negotiated the purchase of the land in question and conveyance to her, after completion of the contract of sale, and at the time of the conveyance mentioned in the referee's report, to allow an entry upon the land, for the purpose of a removal of the timber therefrom. The referee found for the defendants upon facts stated by him as follows, viz.:

" That for several years prior to April 23, 1863, the defend-

ant, William P. Ottley, was seized and possessed of the following described premises, viz. (describing them):

"That on the 23d day of April, 1863, Harlow Munson, sheriff of Ontario county, pursuant to a judgment of foreclosure and sale ordered by this court, sold and conveyed said premises to one Nathan Oaks. That on the 25th day of May, 1863, said Oaks and wife conveyed the premises described in the complaint in this action (being a part of the premises so purchased by said Oaks) to the plaintiff, who has been in the possession thereof ever since.

"That on the 6th day of February, 1864, said Oaks and wife, pursuant to a previous agreement made so to do, conveyed the balance (being the north part of said premises so purchased by him at said sheriff's sale, and consisting of about fifty-two acres) to the defendant, Milton H. Ottley. That on that portion of said premises so conveyed to said Milton H. Ottley, there was no wood or timbered land. That on the south part, on the forty acres so conveyed to said plaintiff, was about thirteen acres of wood or timbered land. That shortly previous to the said sheriff's sale, there was a verbal agreement or understanding between said Oaks and said Ottley that in case he, said Oaks, became the purchaser of said premises herein firstly described at said sheriff's sale, that then and in that event he, said Oaks, would deed and convey to the defendant, Milton H. Ottley, that portion of said premises, which he afterward did convey to him on the 6th day of February, 1864, provided said William P. Ottley would find a purchaser and negotiate a sale of the south forty acres of said premises—being the forty acres described in said complaint in this action—at the price of eighty-five dollars per acre, including the wood and timber thereon, or sixty-five dollars per acre reserving the wood and timber thereon.

"That thereupon said William P. Ottley did proceed to find such purchaser and negotiate a sale of said forty acres, and did shortly negotiate a sale of said forty acres to the plaintiff, upon the following terms, viz: At the price of sixty-five dollars per acre, reserving all the wood and timber then

thereon (excepting three or four shade trees), and the sugar-house and saw-mill thereon, with the right of ingress and egress to and from the same for and during the term of three years from the date of the deed for said forty acres, in and during which to enter, cut and take away said wood, timber, sugar-house and saw-mill, for the use and benefit of said Milton H. Ottley ; and which agreement was verbal.

"That said terms of sale and such sale were reported to said Oaks, who became purchaser of all said premises as here-inbefore stated. That said Oaks approved and consummated such agreement and sale to and with the plaintiff; and on the next day after said Oaks became such purchaser, said William P. Ottley, acting for said Oaks and said Milton H. Ottley, and said plaintiff by her husband, Calvin G. Carpenter, who acted for and on behalf of the plaintiff, in all he did in respect to the purchase of said forty acres, proceeded and employed a surveyor, Lewis Peck, to run off and survey off the said forty acres, and did do so, they, the said Willaim P. Ottley, and said Calvin G. Carpenter assisting as chain-bearers in so doing ; and then employed said Peck to draw a deed to the plaintiff for said forty acres. That when said deed was about being made out, at the same time, the terms and conditions of such sale, and the reservations in regard to the wood and timber, sugar-house and saw-mill, were stated over to said Peck as he was about to then prepare said deed, that the same might be included therein ; and thereupon, at the suggestion of said Peck that said reservations would encumber the record, and by his advice, it was then and there agreed that said reservations in relation to said wood and timber, sugar-house and saw-mill, and time of getting off the same, should not be inserted in the said deed, but that a separate writing, containing the same, should be subsequently executed by the plaintiff to said Milton H. Ottley ; and under these circumstances, and for this reason, the said deed to said plaintiff; was executed and delivered by Oaks and the plaintiff without containing said reservations, and upon the express assurance by said plaintiff, by her said hus-

band and agent, that it would make no difference, "would all be right," and that defendant can "go on and cut," and take off said wood and timber, etc.

"That in the fall of 1863, the defendants did enter and proceed to cut and take away said wood and timber, and continued so doing until the 6th day of February, 1866, each year, when the plaintiff forbade them from cutting or taking away any more of said wood or timber. That during all the time from May 2d, 1863, to February 6th, 1866, the plaintiff knew said defendants were at work taking off said wood and timber, and made no objections thereto.

"That said defendants, on being so forbidden by the plaintiff, by her said husband, immediately ceased to cut or take away more of said wood or timber.

"That on the 9th day of February, 1866, this action was commenced. That at the time the defendants were so forbidden by the plaintiff, they had cut and taken away nearly all the wood and timber that were on said premises, at the time the deed was made to her, except the shade trees specified.

"That on the sale of the remainder of said premises, by said Oaks to Milton H. Ottley, it was agreed that said Milton H. Ottley was to have all the wood, timber, and sugar-house and saw-mill, so reserved in the agreement with said plaintiff; and in consideration thereof said defendant, Milton H. Ottley, was to secure and pay said Oaks for the thirty-two acres so sold and conveyed to him, $800 more, or in addition to what he was to do in case the said wood, timber, sugar-house and saw-mill, were not reserved for his benefit; and said Milton H. Ottley actually paid, or secured to be paid, said sum of $800, in consideration of such reservation for his use and benefit.

"That the defendants, at different times after the execution and delivery of said deed to the plaintiff, requested her to execute and deliver to said Milton H. Ottley, the separate writing containing said reservations in relation to said wood, timber, sugar-house and saw-mill, pursuant to said agree-

ment; but she refused or neglected to do so, though one was prepared by the defendants for her to sign, and presented to her for that purpose. That all the wood and timber cut or taken away by said William P. Ottley, was cut for and at the direction of said Milton H. Ottley; and all cut or taken away by said Milton H. Ottley, or by either of the defendants, was cut and taken away under, and pursuant to the agreement made with the plaintiff, at the time she purchased said premises, and under the reservation then made in relation to the same."

*W. F. Diefendorf*, for the appellant.

*S. Baldwin*, for the respondent.

Present—Dwight, Johnson and J. C. Smith, JJ.

By the Court—Johnson, J. It is settled, upon abundant authority, that a defendant, under section 150 of the Code, may set up an equitable defence to an action in the nature of a legal action, and defeat such action thereby, if he can establish such defence. (*Dobson* v. *Pearce*, 12 N. Y. R., 156; *Crary* v. *Goodman*, id., 266; *Phillips* v. *Gorham*, 17 id., 270.)

A recovery of property or the value thereof by a plaintiff who has the mere legal title, will not be allowed against a defendant who has the equitable title to such property, and who might in an action against the plaintiff, to compel a specific performance, compel the latter to convey or transfer such legal title to the defendant. The defendant must, of course, set up his defence, in such a case, by way of answer, and establish it by his evidence. If, therefore, the defendant, Milton H. Ottley, under whose authority the timber in question was taken, could have compelled the plaintiff to convey to him the timber, in an action for that purpose, the decision of the referee is right upon the merits. I do not see but that the facts found by the referee are warranted by the evidence in

the case before him.    The case, then, upon the facts is briefly this: The two parcels of land owned by the plaintiff and the defendant, Milton H. Ottley, respectively, were originally a single farm.    The plaintiff purchased her parcel without the timber, then growing thereon, and upon an agreement that the same should be reserved when the land was conveyed to her.    The defendant, Milton H. Ottley, purchased the parcel of said farm occupied by him, and in addition thereto the timber in question standing on the land purchased by plaintiff, and agreed to pay, and did in fact pay, or secure to be paid, $800 over and above the price of his land for the timber aforesaid.    When the plaintiff's land was conveyed to her, it was suggested and agreed, that, instead of reserving the timber in her deed, according to the original agreement and understanding, the deed should be made without reserving the timber, and the plaintiff should thereafter, upon request, execute to the said defendant an instrument in writing, conveying him the timber in question.    This was suggested by the scrivener who drew the plaintiff's deed, as a more convenient way of carrying out the original bargain, and adopted by the grantor and the plaintiff.    This writing the plaintiff subsequently refused to execute, on request.    This action is for trespass in taking that timber, and the plaintiff claims treble damages under the statute.

Upon these facts it is obvious that the defendant, Milton H. Ottley, was the equitable owner of the timber, and that the plaintiff held the legal title as his trustee only.    Milton H. could have compelled her to execute the writing, giving him the right to the timber, in an action for a specific performance, though he was not a party to the agreement.    It was made for his benefit, and was to be performed to him. The consideration moved from him.    It is now well settled that such a promise may be enforced in an action legal in form, as it always could have been in equity.    The case upon this point is so clear upon the merits, that the other questions need not be examined at length.

The original contract of sale to the plaintiff was made

Carpenter *v.* Ottley.

with her husband, who acted as her agent. The price at which the premises were offered was eighty-five dollars per acre with the timber included, or sixty-five dollars per acre with the timber excluded and reserved. The latter proposition was accepted. The agreement also in regard to the deed, and the execution of the writing by the plaintiff to the defendant, Milton H. Ottley, for the timber, was made with the plaintiff's husband, who claimed to be acting as her agent. The deed, after it was made out in pursuance of such understanding and agreement, was delivered to the husband for the plaintiff. The plaintiff, having accepted the deed and taken all the benefits and advantages of the bargain and the arrangement, made in her name and behalf, must be held to have ratified what her agent did in her behalf, in making the bargain and in taking the conveyance, and to have adopted it. She cannot enjoy the fruits of the transaction without adopting all the instrumentalities employed by the agent in bringing it to a consummation. (*Bennett* v. *Judson,* 21 N. Y. R., 238.) The arrangements made with the husband acting for the plaintiff were therefore properly received in evidence. They were not mere declarations of an agent, but were *res gestœ.* They became, and were, in part, the acts and agreements of the plaintiff herself, after she took the conveyance and held the land under it.

The evidence of the agreement in respect to the reservation of the timber, and that the plaintiff should convey it to the defendant, did not tend to vary or contradict the covenants in the deed. The agreement to convey the timber was founded upon the deed, and was in no respect in hostility to it. It was like any other parol agreement to convey an interest in land founded upon any other consideration, which has been paid by the purchaser. It is not the fault of the defendant, Milton H. Ottley, that his right now rests in parol. It was agreed that it should be secured by a written conveyance, and it now rests in parol merely because the plaintiff, in violation of her obligation, has refused to execute the written instrument. Under such circumstances, the plaintiff

Carpenter *v.* Ottley.

atte.npts, with bad grace, to set up the non-existence of written evidence of the right. The courts will not allow a party to take advantage of his own wrong in this way. It would be using the statute of frauds to promote, instead of preventing, frauds and perjuries. The plaintiff, upon the facts of this case, is estopped from setting up the statute of frauds. (*Ryan* v. *Dox*, 34 N. Y. R., 307, and cases there cited.)

The judgment is right and must be affirmed with costs.