GEORGE D. LAMONT, Appellant, *v.* RICHARD Y. CHESHIRE et al., Respondents.

The filing of a notice of suit pending, and the levy, by virtue of an attachment upon real estate formerly owned by the defendant but sold and conveyed, to the knowledge of the plaintiff, prior to the filing and levy, does not defeat the title of the purchaser, if regular in all respects, save that his conveyance is not recorded; nor is such title subordinated to the lien of the attachment.

The provision of the Code (§ 132), providing for the filing of *lis pendens,* making it constructive notice to a purchaser, and declaring that a purchaser whose conveyance is subsequently executed or recorded shall be a subsequent purchaser and shall be bound by the proceedings, simply

affects such purchaser "to the same extent as if he were made a party" to the action; and the title of a purchaser so holding under a prior unrecorded conveyance, if made a party, could not, under such circumstances, be affected when plaintiff, at the time of filing notice, had actual or constructive notice of his rights.

*Stern* v. *O'Connell* (35 N. Y., 104) distinguished and limited; *Hovey* v. *Hill* (3 Lans., 167) distinguished.

Under an execution, issued in an action wherein notice had been filed and attachment issued and levied as aforesaid, the sheriff sold and subsequently conveyed all the estate in the premises of which the judgment debtor was seized and possessed on the day judgment was perfected. In an action of ejectment by one claiming under the sheriff's deed, *held,* that as prior to that day the judgment debtor had conveyed and then had no estate, nothing was conveyed by the sheriff's deed.

(Argued September 29, 1874; decided January term, 1875.)

APPEAL from an order of the General Term of the Supreme Court, in the fourth judicial department, setting aside a verdict in favor of plaintiff, and directing a new trial.

The action was in ejectment for the recovery of certain real estate, situate in Niagara county. (Reported below, 6 Lans., 234.)

The plaintiff proved, on the trial, that in June, 1859, John S. Harp became the owner of the premises, and he was a non-resident. David Harp, on October 19, 1859, commenced an action in the Supreme Court against said John S. Harp, and procured an attachment against his property, and on the same day the premises in litigation were attached by the sheriff, and a notice of pendency of action was filed as prescribed by section 132 of the Code. The action was prosecuted to judgment, which was perfected and docketed January 31, 1860. On October 26, 1859, Hiram Dennison commenced an action against said John S. Harp in the same court, and procured a like attachment; notice of pendency of the action was filed on the same day, and judgment was perfected and docketed January 31, 1860. On November 16, 1859, George W. Smith also commenced an action against said John S. Harp in the same court, and procured a like attachment; notice of the pendency of the action was filed November 17, 1859, and judgment was perfected and docketed on the same day (January 31,

1860) with the Harp and Dennison judgments, and at the same hour. On February 10, 1860, executions on these three judgments were issued to the sheriff of Niagara county, whereby he was commanded, in want of personal property, to satisfy the respective judgments from the real property belonging to John S. Harp, on January 31, 1860, or at any time thereafter. Under these executions the sheriff sold the premises in question, with other lands, to David Harp, Hiram Dennison and George W. Smith, for $100, issuing to them the usual certificate of sale. The sale took place on March 27, 1860. The defendant Cheshire, as grantee of the judgment debtor, redeemed the premises thus sold within a year, viz., on March 26, 1861, paying the purchase-price and the interest prescribed by law. On August 21, 1861, the sheriff sold the same lands, under the same executions, to the plaintiff for $1,000, and issued to him a certificate of sale. In this certificate the executions are recited, and the fact that he was thereby required to satisfy the judgments out of the debtor's lands, which he had on January 31, 1860, or thereafter. He then proceeds to state that he had previously taken and attached the lands, and, until the sale, held them by virtue of the attachments. He then certifies that he sold by virtue of the executions, and that the purchaser would be entitled to a conveyance unless redemption took place in the manner prescribed by law. On August 27, 1863, the sheriff, pursuant to his sale, executed his deed to the plaintiff, whereby he conveyed to him all the right, title and interest which John S. Harp had in the premises on January 31, 1860, or at any time afterwards. The deed recites that the sale had been made in obedience to the executions, and also that the land had been levied upon and attached, and was, at the time of the sale, held under and by virtue of three several warrants of attachments issued in favor of the plaintiffs in the several actions. The granting clause in this deed states that the sheriff grants all the estate of which John S. Harp was seized or possessed on the 31st day of January, 1860.

It was further shown by plaintiff that, before the action was commenced, the defendant Cheshire was in possession of

the premises, claiming to own them in fee, and also that, before the action was commenced, Cheshire put the defendant Marshall Martin in possession, who has continued in possession ever since, holding under Cheshire.

The defendants proved that, on September 17, 1859 (more than one month before either attachment was issued), John S. Harp, by his deed, dated, delivered and duly acknowledged on that day, conveyed to Cheshire the premises in question (with other lands sold by the sheriff) for the consideration of $3,500. This sum was actually paid by Cheshire. The deed was duly recorded in the office of the clerk of Niagara county on November 14, 1869; this record thus being made after the first two and before the last notices of the pendency of the action were filed. Said Cheshire took possession of the premises so conveyed, and has ever since claimed to hold the same by virtue of his deed.

The defendants then moved, first, that the plaintiffs be nonsuited; second, that the court direct a verdict for the defendants. These motions were denied, and defendants' counsel duly excepted.

The court then held, in substance — under exception — that, conceding that the deed to Cheshire was made, delivered, and the consideration paid in good faith, on the day that the same bears date, yet that, as to the plaintiffs, David Harp and Hiram Dennison, in the first two actions against John S. Harp, in which the notices of *lis pendens* were filed and the actions commenced, and the attachments levied before the recording of the deed from John S. Harp to Cheshire, and consequently as to the present plaintiff, the said Cheshire is to be deemed a "subsequent purchaser or incumbrancer" under section 132, Code. The plaintiffs' title is, by reason of that section, paramount to that of Cheshire on the ground that, after the making and delivery of the deed, and before its record, J. S. Harp and Dennison, by their actions and proceedings, acquired a lien superior to Cheshire's title, and that the sheriff's deed to the plaintiff cut off Cheshire's title. To which defendants' counsel duly excepted. The judge then directed the jury to

find a verdict for the plaintiffs, to which direction due exception was taken.

Exceptions were ordered to be heard in the first instance at General Term.

*A. K. Potter* for the appellant. Defendant was, as to plaintiff, a subsequent incumbrancer or purchaser. (Code, § 132; *Hovey* v. *Hill*, 3 Lans., 167, 171; *Stern* v. *O'Connell*, 35 N. Y., 104.) The second sale on same executions was proper. (*Wood* v. *Colvin*, 5 Hill, 228; *Titus* v. *Lewis*, 3 Barb., 70; *Bodine* v. *Moore*, 18 N. Y., 347; *Phyfe* v. *Riley*, 15 Wend., 248.)

*L. F. Bowen* for the respondents. The sheriff's deed did not convey any interest the debtor had in the land prior to January 31, 1860. (*Sanford* v. *Roosa*, 12 J. R., 162; *Lansing* v. *Montgomery*, 2 id., 382; *Wel. C. Co.* v. *Hathaway*, 8 Wend., 480; *Jackson* v. *Roberts*, 7 id., 83; 11 id., 422.) The *lis pendens* did not divest Cheshire of any title he had in the land. (*Stuyvesant* v. *Hall*, 2 Barb. Ch., 151.) His title was not affected by the judgments against Harp. (*Hopkins* v. *McLaren*, 4 Cow., 667; *Parks* v. *Jackson*, 11 Wend., 422; *People* v. *Connolly*, 2 Abb. Pr., 128; *Chapman* v. *West*, 17 N. Y., 127.) A *lis pendens* does not confer new rights or interests in property, or divest any one of such rights and interests, but preserves those already acquired. (2 Laws 1857, p. 553; Laws 1858, p. 491.)

DWIGHT, C. The question to be decided in this cause concerns the true construction of the one hundred and thirty-second section of the Code, as it stood in the year 1859. This section then provided that, "in an action affecting the title to real property, the plaintiff, at the time of filing the complaint, or at any time afterward, or whenever a warrant of attachment under chapter 4 of title 7, part second of this Code, shall be issued, or at any time afterward, the plaintiff, if the same be intended to affect real estate, may file with the clerk of each county in which the property is situated, a notice of the pendency of the action,

containing the names of the parties, the object of the action and the description of the property in that county affected thereby. * * * From the time of filing only shall the pendency of the action be constructive notice to a purchaser or incumbrancer of the property affected thereby, and every person whose conveyance or incumbrance is subsequently executed or *subsequently recorded* shall be deemed a subsequent purchaser or incumbrancer, and shall be bound by all proceedings taken after filing of such notice, to the same extent as if he were made a party to the action."

The attachments under which the plaintiff claims title were levied and the *lis pendens* filed before the deed executed by John S. Harp to Cheshire, one of the defendants, and under whom Martin, the other defendant, claims, was recorded. The question is thus directly presented as to the meaning of the provision in the section of the Code above cited, that a person whose conveyance is recorded subsequent to the filing of a *lis pendens* shall be deemed a "*subsequent purchaser or incumbrancer.*"

The plaintiff contends that the effect of this clause is, that if a purchaser has acquired a title regular in all respects except that his conveyance is not recorded, a creditor with full knowledge of his title may commence an action by attachment, file a notice of *lis pendens*, and thus obtain a lien superior to the title of such purchaser, and that accordingly a sale to effectuate the attachment proceedings would destroy and cut off the unrecorded conveyance.

This is certainly an extraordinary proposition in the law of real property, and contrary to the analogies of that law. Our law has hitherto been careful to preserve equitable liens against legal owners, having knowledge of the equities; to prefer an unrecorded deed or mortgage to a subsequently docketed judgment, and generally to uphold every existing lien or title in good faith, though irregular in point of form, against a mere creditor of one holding subject to the equitable lien or other imperfect title. The plaintiff should plainly be held to establish his position, so different in its character from

the usual legal theories, by clear and manifest proof of the legislative will.

For a clear and comprehensive view of this highly important question, it is necessary to consider the nature of a notice of the pendency of an action, and the office which it is designed to fulfill. Its function is to carry out the well known legal maxim, *pendente lite, nihil innovetur.* It was found to be necessary to the administration of justice that the decision of a court of equity in a suit should be binding not only on the litigant parties, but on those who derive title from them *pendente lite,* whether with notice of the suit or not. It is simply a rule of law to give effect to the rights ultimately established by the decree. (*Bishop of Winchester* v. *Paine,* 11 Ves., 194.) The theory of a *lis pendens* was much discussed in the recent case of *Bellamy* v. *Sabine* (1 De Gex & Jones, 566). It is there said that the correct doctrine is, that the law does not allow to litigant parties to give to others, pending the litigation, rights to the property in dispute, *so as to prejudice* the opposite party. Another form of statement is, that where a litigation is pending between a plaintiff and a defendant as to the right to a particular estate, the necessities of mankind require that the decision of the court shall be binding not only on the litigating parties, but also on those who derive titles under them by alienations made pending the suit. If this were not so, there could be no certainty that the litigation would ever come to an end. The rule largely has its roots in public policy, and does not rest, as is sometimes supposed, on the equitable doctrines of notice binding on the conscience. The doctrine is not peculiar to courts of equity. In the old real actions, the judgment bound the lands, notwithstanding any alienation by the defendant *pendente lite,* and it cannot be claimed that this is on any other ground than that which has been already stated. Were it not for the doctrine in question, the plaintiff would be liable in every case to be defeated by the defendant's alienating before the judgment or decree, and would be driven to commence his proceedings *de novo,* subject again to be defeated by a similar

course of proceeding. (Story on Eq. Jur., §§ 405–908, and note 5 to last section; *Murray* v. *Lylburn*, 2 Johns. Ch., 441; *Gaskell* v. *Durdin*, 2 Ball. & Beatty, 167; *Hayden* v. *Bucklin*, 9 Paige, 513.)

The rules of the English equity courts on this point are fully recognized in the jurisprudence of this State. (*Murray* v. *Lylburn, supra; Hayden* v. *Bucklin, supra.*)

The Laws of 1823 (p. 213, § 11) recognized this doctrine and simply regulated it by providing that the filing of a bill should not be constructive notice unless the complainant should file a notice with the clerk of the county in which the land is situated. The same provision was found, in substance, in the Revised Statutes.

There are no expressions in the Code which can be supposed to have changed the rules of equity on this subject, except in mere matters of form, until we reach the clause now under consideration.

It has been seen, in the course of this discussion, that the theory of a *lis pendens* is that there must be no innovation in the proceedings so *as to prejudice* the rights of the plaintiff. It is simply a rule to give effect to the rights *ultimately* established by the decree. Applying this doctrine to the present case, it would be impossible to claim that a *lis pendens* could give a creditor under an attachment a lien superior to the title of a purchaser under an unrecorded conveyance. The statute distinctly provides that a person whose conveyance is executed or recorded subsequent to the filing of a notice shall be deemed a subsequent purchaser, and bound by the proceedings *to the same extent as if he were a party to the action.* It is necessary to ascertain, therefore, what would have been the effect if the defendants had been made parties to the action. Had the plaintiff made the defendants parties to the action, his attachment proceedings would, of course, have been nugatory. As soon as the whole case had been disclosed it would have appeared that he was making a claim against a person who was in no respect liable to him, and his complaint would have been dismissed. How can he, under the statute, have

any greater claims by omitting him? The words "to the same extent as if he were a party to the action" cannot be omitted in construction.

The scope of the clause is quite apparent. The case of conveyances executed *after* the filing of the notice comes within the ordinary rules of equity. What is new in the one hundred and thirty-second section of the Code is the provision in respect to a conveyance *executed prior to* and *recorded subsequent to* the filing of the notice. The clause as to this matter was introduced mainly to provide for a class of controversies where a title inferior in right and subordinate to that of the plaintiff had not been put on record, but had accrued prior to the commencement of the action or of the filing of the notice. Under the former rules, it would be necessary to make the owner of such a title a party, as his right did not come to him during the pendency of the action. It might frequently be difficult for the plaintiff to ascertain the fact that such a sale had taken place. The section of the Code, as modified, makes all such inquiry unnecessary. While it also applies to cases of rights superior to those of the plaintiff, it only affects them in such a way as they would be influenced if the owners were parties to the action. Thus, if a second mortgagee should desire to foreclose, his omission to make the holder of a prior unrecorded mortgage a party, would not enable him, with full knowledge of the facts, to gain a superior title. On the other hand, if there should be a purchaser in good faith, he would, in all probability, acquire a perfect title, and the holder of the prior unrecorded mortgage would be remitted to an equitable claim upon the purchase-money as against any person holding a position subordinate to his own. Each case would thus be governed by its own peculiar circumstances. There is but a single underlying principle. This is, that the holder of the unrecorded instrument is affected to the same extent " as if he were a party to the action," and had not appeared or made any defence.

A single instance, showing the correctness of this rule, will suffice. Suppose that a second mortgage is unrecorded, and

the holder of the first and recorded mortgage commences to foreclose, after the execution of such second mortgage, at the same time filing a regular notice of the pendency of the action. The second mortgagee is accidentally or purposely omitted as a party. Has he no rights, whatever, or may he appear before a referee appointed to ascertain the rights of parties to surplus moneys and make his claim? It would be absurd to say that he cannot. If he can, he is precisely in the position that he would have been in, had he been made a party to the action and had not answered or taken other steps in the cause.

These views are not opposed to the case of *Stern* v. *O'Connell* (35 N. Y., 104). In that case, the *lis pendens* was filed before the mortgage in controversy was given. The present case was therefore not under consideration. The remarks of HUNT, J., on pages 109 and 110, must be confined to the case then before the court.

In *Hovey* v. *Hill* (3 Lans., 167) it was held that an assignee of a mortgage is an incumbrancer within the Code (§ 132) and taking by an assignment executed after, or recorded after, the filing of a *lis pendens*, in an action to set aside the conveyance of the mortgaged premises to the mortgagor as fraudulent against the creditors of his grantor, was bound by the judgment therein recovered. This decision was put upon the ground that the assignee takes, subject to the equities affecting the mortgagee, and the evidence showed that the mortgage was fraudulent. This case can be sustained on the ground that the holder of the unrecorded assignment was placed by the court exactly in the position that he would have been in had he been a party to the action, and had the case gone against him, or had he made no defence to a *prima facie* case made by the plaintiff.

The result is, in the case at bar, that the plaintiffs in the D. Harp and Dennison judgments could gain no title as against Cheshire, and their attachments were no lien.

The plaintiff Lamont stood in their position. The evidence shows that he was aware of Cheshire's rights, as it appears by undisputed testimony that Cheshire was all the time in pos-

session, claiming as owner. The judge was bound to take this testimony into account when he was asked by the defendants to direct a verdict in their favor, as well as when he was called on by the plaintiff either to grant a nonsuit to him, or to direct a verdict in his favor.

But, even supposing that the present plaintiff took the legal title under the sheriff's deed, there is another fatal objection to his recovery in the present action. His title was subordinate in equity to the claim of the defendants. Having constructive notice of the defendant's equitable rights by his possession under claim of title, as has been already shown, if he chose to purchase the land, he took it subject to whatever rights it might turn out that the defendants were entitled to in equity. It is scarcely necessary to cite authorities for a proposition so consonant with justice. The rule of construction, that a statute is not to be interpreted so as to work a fraud, has been regularly followed in the chancery courts. A few references will be sufficient.

Under the English enrollment act (27 Henry VIII, c. 26), it is provided that no lands or hereditaments shall pass from one person to another whereby any estate of inheritance or freehold *shall be made* or *take effect* in any person or persons by reason of any bargain or sale, except it be enrolled as provided in the act. It was held by Lord Chancellor HARDWICKE, in *Le Neve* v. *Le Neve* (cited in 4 Cruise's Dig., 456), that, notwithstanding the words that the bargain "shall not be made or take effect," that if there be a prior bargainee whose deed is not enrolled, and a second whose deed is properly enrolled, if this last had notice of the prior deed, the prior shall prevail in equity. So under the registration acts. (2 and 3 Anne, c. 4; 6 id., c., 35; 7 id., c. 20; 8 George II, c. 6.) These provide a system of registration for the counties of York and Middlesex, and enact that no unregistered deed shall be adjudged *fraudulent and void* against any subsequent purchaser for a valuable consideration, unless the deed be registered, etc. The English courts have uniformly held, notwithstanding the generality of

the words of these acts, that an unregistered deed is to be preferred, in equity, to a subsequent registered deed taken by a subsequent purchaser with notice. (*Forbes* v. *Deniston*, 4 Bro. Parl. Cas., 189; *Blades* v. *Blades*, 1 Eq. Ab., 358; 3 Atkyns, 654; *Cheval* v. *Nichols*, 1 Strange, 664; *Le Neve* v. *Le Neve*, Ambler, 436; *Whitbread* v. *Boulnois*, 1 You. & Coll. [Exch.], 303.)

Under these acts, the view taken has been, that though the legal estate passed to the subsequent purchaser, yet he took it charged with an equity in favor of the holder of the prior unregistered conveyance.

It is not intended in this discussion to concede that the correct view is that in such cases the legal title passes to the subsequent purchaser under the registered conveyance, but only to maintain that, if that be so, he must take it charged with the equitable rights of the holder of the prior unregistered conveyance. The better view undoubtedly is, that the holder of the registered conveyance, with notice, obtains *no title whatever* as against the purchaser under the unregistered conveyance. The whole subject is well summed up by Mr Hare, in his notes to *Le Neve* v. *Le Neve* (2 Lead. Cas. in Eq., 183, 184 [3d Am. ed.]). He says: "It is held, in general, in this country that a conveyance, duly registered, passes no title whatever when taken with a knowledge of the existence of a prior unregistered conveyance." (Citing cases.) This construction is sustained by the wording of some of these acts, which declare unregistered conveyances void as against subsequent *bona fide* purchasers, or purchasers without actual notice, and thus sanction the inference that they will be good when notice or *mala fides* is shown to have existed. * * * But it seems well settled that the construction is the same where no such qualifying words are introduced, and where it is declared that unregistered conveyances shall be void as against purchasers generally, or against all persons who are not parties to the conveyance. (*Gilbert* v. *Burgott*, 10 J. R., 457; *Van-Rensselaer* v. *Clark*, 17 Wend., 25.) Thus, under the recording acts of Pennsylvania, an unrecorded mortgage is deprived

of all operation as a lien on the premises mortgaged, without any saving of the rights of the mortgagee as against parties acting *mala fide* or with notice. But it has, notwithstanding, been decided that notice of such a mortgage will supply the want of registry, and bind a subsequent purchaser. (*Stroud* v. *Lockart*, 4 Dallas, 153; *Jaques* v. *Weeks*, 7 Watts, 261; *The Manufac. and Mechanics' Bank* v. *The Bank of Penn.*, 7 W. & S., 335; *Solmes* v. *McCullough*, 5 Barr, 473.) And in some of the cases this principle of construction has been held to be one of such general application that notice of an unregistered deed to a creditor, before judgment, will prevent the lien of the judgment from attaching, even where such deeds are made absolutely void as against creditors."

In whatever light the act of the plaintiff in the present action be regarded, whether it be considered that he obtained no title at all as against the defendant Cheshire, or whether he obtained the legal title by force of the attachment proceedings, the practical result will be the same. If the defendant has the equitable estate, he can set it up as a defence to an action of ejectment brought under the provisions of the Code. (*Crary* v. *Goodman*, 12 N. Y., 266; *Thurman* v. *Anderson*, 30 Barb., 621; *Dodge* v. *Wellman*, 1 Abb. Ct. App. Dec., 512; S. C., 43 How. Pr., 427; *Carpenter* v. *Ottley*, 2 Lans., 451; *Phillips* v. *Gorham*, 17 N. Y., 270.)

As the defendant Cheshire entered upon the premises in litigation under his unrecorded conveyance, his possession, and that of his tenant, Martin, was sufficient notice to the plaintiff of his equitable rights. If the plaintiff acquired the legal title, he was, by reason of the constructive notice derived from possession, converted into a trustee for the equitable owner. (*Whitbread* v. *Boulnois*, *supra*; *Tuttle* v. *Jackson*, 6 Wend., 213; *De Ruyter* v. *Trustees of St. Peters*, 2 Barb. Ch., 556; *Grimstone* v. *Carter*, 3 Paige, 421; *Williamson* v. *Brown*, 15 N. Y. 354; *Landes* v. *Brant*, 10 How. [U. S.], 348; 2 Lead. Cas. in Eq., 194, 195, and cases cited [3d Am. ed.]; *Flagg* v. *Mann*, 2 Sumner, 554.) These cases show that the possession of the defendants was sufficient to put the

plaintiff upon inquiry as to the nature and extent of their rights. He is accordingly presumed to have made the inquiry and to have ascertained the defendant's rights, or to have been guilty of a degree of negligence equally fatal to his claim to be considered a *bona fide* purchaser. He is accordingly chargeable with knowledge of all that he could have learned by an exact and diligent inquiry.

There is a more technical ground on which the disposition of this cause might be placed. It is an elementary rule that a plaintiff in ejectment can only recover on the strength of his own title, and not upon the weakness of that of his adversary. The source of the plaintiff's title in this action is the sheriff's deed. That is limited to a conveyance of the estate of which John S. Harp was seized or possessed on the 31st day of January, 1869. There was no dispute upon the point that John S. Harp had conveyed his estate to the defendant Cheshire before that day. Accordingly, he was seized of no estate on that day, and the sheriff's deed conveyed nothing to the plaintiff. While recognizing this as a sufficient ground for dismissing the complaint, I desire also to rest the decision of the cause upon the other grounds discussed in this opinion, and principally considered on the argument.

There was no error in the disposition of this cause in the court below, and its judgment must be affirmed.

All concur.

Order affirmed, and judgment absolute ordered against plaintiff.