CHAFLIN v. GANTZ et al.

(Supreme Court, Trial Term, New York County. June 9, 1896.)

1. EJECTMENT—EQUITABLE DEFENSE—MISTAKE IN DEED.
    Plaintiff purchased six vacant lots at auction sale by number as shown on the auctioneer's map. Defendant also purchased six lots on which a building was situated. In the deeds the lots were described by number, reference being made to a map in the register's office, by which the lots purchased by plaintiff were given the numbers which, according to the auctioneer's map, belonged to the lots purchased by defendant, and vice versa. Defendant's deed called for six lots and the buildings thereon, while plaintiff's deed was silent as to buildings. Defendant took possession of the lots he purchased according to the auctioneer's map. Held, that the facts showed a mutual mistake in the description of the property conveyed entitling defendant to a reformation of his deed, and which may be pleaded as an equitable defense in an action of ejectment founded on the legal title held by plaintiff.

2. LIMITATION OF ACTIONS—REFORMATION OF DEED IN EQUITY.
    The statute of limitations will not begin to run against defendant's right to have his deed reformed until he is charged with notice of the adverse claim.

Action by Jane V. Claflin against George F. Gantz and others to recover possession of real estate. Complaint dismissed.

J. A. Beal and M. L. Townsend, for plaintiff.
Wm. Hildreth Field, for defendant Gantz.

McADAM, J. At an auction sale of lots belonging to the estate of Charles M. Connolly, deceased, had April 9, 1878, the plaintiff,

through one Camp, an agent, purchased six vacant lots, shown upon the auctioneer's map as Nos. 32, 33, 34, 51, 52, and 53, and the defendant Gantz purchased six lots shown on said map as Nos. 28, 29, 30, 55, 56, and 57, with the improvement exhibited thereon as the "Century House." Deeds were thereafter executed in which the same lot numbers were used, but the description clause referred to them as known by those numbers upon a certain map, filed in the register's office as map No. 814, 20 days subsequent to the sale. This last-mentioned map gave the six lots purchased by the plaintiff the numbers which appeared upon the auctioneer's map as having been purchased by Gantz, and vice versa. The defendant Gantz took possession of the six lots he purchased according to the auctioneer's map, and thereafter rented the property to the co-defendant, Walter R. White, who, as occupant, was joined as a party. The discrepancy was not discovered till about 1887, and the plaintiff shortly afterwards brought this action to recover the property thus possessed by Gantz, because her deed, according to the lot numbers, which were taken from the map filed in the register's office, purported to convey his lots. That Gantz did as matter of fact purchase the Century House and the six lots upon which it stands, and of which he took possession, is evident from everything that appears in the case; and that the plaintiff never asserted any title, or made or supposed she had any claim thereto, until the error in description was discovered, is equally clear. The action is an outgrowth of that error, and is, in effect, founded upon it. The plaintiff paid $155 each for three lots, and $165 each for the other three; while Gantz, at the same sale, paid $390 a lot for his property. This indicates that the more valuable property was purchased by the latter. His deed conveys the land "with the buildings thereon erected," which the deed to the plaintiff conveys six lots, and is silent as to buildings. The fact is significant, because the grantors are the same, and both deeds were delivered to carry out the auction sale. At the sale the Century House and the six lots on which it stands were sold as one piece, while the six lots purchased by the plaintiff were sold separately. These circumstances all confirm the fact that there was a mutual mistake in referring to the map on file, or in not conforming the numbers of the lots so as to properly identify them as they were sold to the purchasers at the auction room. For a party to seek to take advantage of a concurrent mistake is in itself a fraud which equity will correct, and, if all the necessary parties were before the court, it would seem a proper case for reforming the deed (15 Am. & Eng. Enc. Law, 626; Pitcher v. Hennessey, 48 N. Y. 415; 2 Pom. Eq. Jur. § 853; Story, Eq. Jur. §§ 142, 152; 3 Daniell's Ch. Prac. [4th Ed.] 1970, note); but this cannot be done with only the two grantees as parties to the record (Mitf. & T. Eq. Pl. [Ed. 1876] p. 256). The defendant Gantz may, however, protect his possession from ejectment by equitable defenses, which include all matters which would have authorized an application to the late court of chancery for relief. Dobson v. Pearce, 12 N. Y. 156; Mandeville v. Reynolds, 68 N. Y. 528, 544; Sheehan v. Hamilton, *41 N. Y.

304. Thus, in an action of ejectment, founded upon the legal title held by the plaintiff, the defendant may allege and prove that he is equitably the owner of the premises, and entitled to a convey-ance thereof (Crary v. Goodman, 12 N. Y. 266; Lamont v. Cheshire, 65 N. Y. 30, 42; Thurman v. Anderson, 30 Barb. 621; Dodge v. Wellman, 1 Abb. Dec. 512; Carpenter v. Ottley, 2 Lans. 451); or he may set up that the land was intended to be conveyed to him, but by a mistake in the description was not included (Hoppough v. Struble, 60 N. Y. 430).

The objection urged by the plaintiff that the right to interpose the equitable defense is barred by the statute of limitations (Code Civ. Proc. §§ 388, 397, 415) is untenable. Where a defendant is in possession claiming under a deed, the statute of limitations does not begin to run against the right to have the deed reformed in equity until such defendant is chargeable with notice of the as-sertion of an adverse claim, even if ever a bar to such relief. Bart-lett v. Judd, 21 N. Y. 200.

The complaint must be dismissed upon the merits, with costs.