## SUPREME COURT.

### Lucius A. Foot agt. Daniel T. Sprague.

Now, a defence purely *equitable* in its character may be interposed to a cause of action strictly *legal*.

In many cases a defendant *must* avail himself of such a defence, if he would do so at all; for it is no longer allowable to bring an action, merely for the purpose of restraining the prosecution of another action, pending in the same court.

These principles *held* applicable to this case, (upon demurrer,) where it appeared that, instead of the plaintiff having a cause of action against the defendant for the possession of certain lands, the defendant had a cause of action against the plaintiff for his default in making previous payments for the land, whereby the defendant was unable to procure a good title, &c.

*It seems*, that the court will, in their *discretion*, where honesty appears, dig up, and shake from the rubbish, of a mass of commingled allegations and matters thrown into an answer without reference to form or comeliness, facts enough to make out a good defence.—Reporter.

*Albany General Term, Dec.*, 1854.

*Present*, Wright, Harris *and* Watson, *Justices*.

This was an appeal from an order made at special term, allowing a demurrer to the second answer of the defendant. The action was brought to recover possession of two hundred and seventeen acres of land in Legg's patent, in the town of Moriah, in the county of Essex.

The complaint stated that the plaintiff had the lawful title to the land; that the defendant was in possession, and unlawfully withheld the same, and claimed that he should be adjudged to

surrender such possession. The allegations in the answer are sufficiently noticed in the opinion of the court. The plaintiff demurred for insufficiency. The demurrer was allowed, and from that order the defendant appealed. The appeal was ordered to be heard in the third judicial district, by reason of the inability of the judges in the fourth district to hear the same.

J. F. HAVENS, *for plaintiff.*
JOHN K. PORTER, *for defendant.*

By the court—HARRIS, Justice. It is difficult to ascertain, by the most diligent perusal of the answer in question, what was the precise line of defence which the pleader who prepared this answer had before his mind. A variety of facts are thrown promiscuously together, without much reference to the question whether they constitute one or several defences; or, indeed, whether they are material to any defence. The following facts, however, may be gleaned from the answer, and these, without reference to the various other matters with which the pleading abounds, constitute, as I think, a good ground for resisting the judgment which the plaintiff seeks to obtain against the defendant.

It is alleged by the defendant that, on the *2d of April,* 1834, one James Green, who claimed to be the owner of the land in question, together with Myron S. Kemble, entered into a contract with one Curtis, by which they agreed to convey the land to Curtis, by good title, upon his paying them $700, in seven annual payments, with interest; that, on the *2d of May,* 1836, the plaintiff and one Stephens, who has since died, claimed that the interest of Curtis in this contract had been duly assigned to them, and thereupon another contract was entered into between the plaintiff and Stephens of the one part, and the defendant of the other part, whereby the plaintiff and Stephens agreed to sell the land to the defendant for the sum of $2,000, to be paid in the manner specified, and to procure for the defendant a deed for the land from Green and Kemble, according to the terms of their contract with Curtis; that they also agreed

to make the payments as they should become due on the contract between Green and Kemble and Curtis, so that there should be no default in the performance of that contract; that the only interest which the plaintiff and Stephens ever had in the land was that derived by the purchase of the interest of Curtis in the contract with Green and Kemble; that the defendant had paid to the plaintiff and Stephens, upon the contract with them, the sum of $1,205.73, and that they had never made any payments upon the contract with Green and Kemble, although the payments had long since become due, and that by reason of such default the contract had become inoperative and void; that the interest of Green had since been sold under a judgment against him, and title perfected in the purchaser; that in 1842, or 1843, Green was discharged under the act of bankruptcy passed in 1841, and any interest which he had in the land passed to his assignee; and that, in fact, Green never had any title to the land, but that it belonged to one Brown; that Stephens died insolvent, and the plaintiff is unable to pay his debts. It is further stated that, relying upon the representations of the plaintiff and Stephens that Green had a good and sufficient title to the land, and their engagement to make the payments on the contract with Curtis, as they became due, the defendant entered into his contract with them, and made his payments thereon, and expended nearly $1,000 in improvements upon the land.

It needs but to present such a state of facts as this to show that this action ought not to be sustained. It is the plaintiff, and not the defendant, who is in default. It is the defendant who has a cause of action against the plaintiff, and not the plaintiff against the defendant.

Assuming the statements in the answer to be true, as we do upon demurrer, it is established that the plaintiff has no interest in the land, legal or equitable; that having induced the defendant to believe that, through him and Stephens, he could obtain a good title, he received over $1,200 on account of the price of the land, and now, without refunding the money, and without the ability to give a title upon the performance of the

Foot agt. Sprague.

agreement on the part of the defendant, and without making compensation for the improvements which the defendant has made upon the land, he seeks to drive him from the possession.

· Such à state of facts might not have been available as a defence to an action of ejectment at common law. But, I apprehend, a court of equity, upon a bill containing this statement, would not have hesitated to restrain the prosecution of such an action, until the plaintiff should at least refund the purchase money he had received, and, perhaps, make compensation for the improvements made upon the land by the defendant. If so, it is now a good ground of defence. It is no longer necessary to bring a suit in equity to restrain inequitable proceedings at law. A defence, purely equitable in its character, may be interposed to a cause of action strictly legal. Indeed, the defendant *must* avail himself of such a defence in this way, if he would do so at all; for it is no longer allowable to bring an action merely for the purpose of restraining the prosecution of another action pending in the same court. (*See Van Zantvoord's Pleadings*, 2d ed., 505, *and cases there cited.*)

I have not thought it worth while to notice the allegations in the answer in respect to the suit by Brown and others, against the defendant, to recover the same premises; or the suit brought by Brown, at an earlier day, against Curtis and the other occupants of the Legg patent; or the suit by Shaw against Spear; or the stipulations between the parties to these suits. It is by the inartificial commingling of these various matters, with those to which I have already referred, that the pleader has been able so effectually to obscure the grounds of his defence as to induce the court, at the special term, to think the answer contained no defence at all. Without inquiring whether these various matters, which seem to have been thrown into the pleading at a venture, contain in them the elements of a defence, I am of opinion that the facts to which I have already referred constitute an equitable defence to the plaintiff's claim to recover the possession of the premises.

The order allowing the demurrer should, therefore, be reversed, and the demurrer overruled, with costs.