By the Court.—Leonard, J.
This action was tried in the court below, without a jury, in Saratoga County. Its object is to recover the possession of a lot of land in the village of Saratoga Springs, demised by a perpetual lease from Harmon Livingston to Risley Taylor, in 1828, upon the condition that *198 Taylor and his heirs and assigns should pay to Livingston) his heirs, executors or assigns, the sum of twenty-five dollars annually; with authority to re-enter in case of its nonpayment.
Livingston assigned this rent charge, in 1829, to Doctor John .Clarke, the father of the plaintiff, who died in 184G, having devised it to the plaintiff and her two brothers. The brothers assigned their interest to the plaintiff. The rent having remained unpaid for several years, the plaintiff, in 1862, served a notice of her intention to re-enter; and payment of the rent being still neglected or refused, she brought this action.
The defendant is in possession as a tenant under John H. "White, who claims to hold by an absolute title in fee, relieved of the rent charge, by deed from Doctor Clarke to Polly Taylor, the widow of Eisley Taylor, executed in 1831, and by several intermediate conveyances from her td the said White. The judge before whom the action was tried, in the Supreme Court, at a special term, found as a fact that Doctor Clarke did not intend that the rent charge should merge in the fee when the land was conveyed to him, and as a conclusion of law that there was no merger; and also that the defendant was estopped, by the deeds under which he claims to hold, from setting up a merger.
Judgment was ordered that the plaintiff recover possession, unless the rent be paid ;v and judgment was thereupon so entered.
The evidence was entirely documentary, except a few formal facts which were agreed on by the parties.
Upon appeal", the general term of the Supreme Court, in the Fourth District, very fully reviewed the facts, and held that the rent charge was extinguished by the unity of possession of the fee in the rent and in "the land, in Doctor Clarke, resulting from a conveyance of the land to him in 1831, by the foreclosure of a mortgage made by Bisley Taylor; that as this was in the nature of a common law action, the court could not look outside of the deed to him to ascertain whether it was his intention to extinguish the rent; that the inquiry whether such intention existed at the time *199 of the conveyance could be raised only in equity; and that the law presumed that Doctor Clarke intended to pass all his estate and interest in the land, in the absence of express terms in the deed from him to Mrs. Taylor, showing an intention to pass a less estate; and the general term reversed the judgment rendered by the special term, and ordered a new trial.
The plaintiff, appealing to this court, has stipulated that judgment absolute be rendered against her, if the order appealed from be affirmed.
The opinions delivered by two of the justices, of the Supreme Court, at general term, concede—one of them expressly, the other by implication—that it was the intention of Doctor Clarke to keep the rent charge in existence, but deny- the right to consider that fact, because it is necessary to invoke a principle of which, it is supposed, a court of equity can alone take cognizance, while the case at law admitted only of the application of common law rules.
This objection lies at the threshhold of the case, and may as well be first examined. It means, in substance, that the plaintiff must resort to a separate action, of an equity nature, to have the existence of her rent charge declared, before she .can maintain her action to recover the possession of the land for the non-payment of the rent.
The Constitution vests the Supreme Court with general jurisdiction in law and equity. (Const., Art. 6, §3.) That court has all the jurisdiction of the late Court of Chancery. The testimony in equity cases is to be taken in like manner as in cases at law. (Id., § 10.) It is declared by the Code of Procedure that it is expedient “ that the distinction between legal and equitable remedies should no longer continue.” Vide Preamble to the Code, and § 69.
The Code permits parties to interpose any defences by answer which they may have, “ whether they be such as have been heretofore denominated legal or equitable, or both.” (§150.) No reply to an answer is necessary unless it sets up a counter-claim, but the plaintiff is permitted to prove any matter in denial or avoidance of the answer, where it sets up new matter, as the case may require. (§ 168.) It is upon *200 the defendant’s motion only that a reply to an answer setting up new matter, not constituting a counter-claim, may, in the discretion of the court, be permitted. (§ 153.)
A defence purely equitable may be interposed to a cause of action strictly legal. (Foot v. Sprague, 12 How. Pr., 355; Hunt v. The Farmers’ Loan & T. Co., 8 How. Pr., 418; Hinman v. Judson, 13 Barb., 629.)
It is no longer allowable to bring an action merely for the purpose of restraining the prosecution of another action. (Auburn City Bank v. Leonard, 20 How. Pr., 193.) A defence that a deed absolute on its face was intended as a mortgage, is available in any action. (Despard v. Walbridge, 15 N. Y., 379.)
AH matters are considered as equitable defences which would have authorized an application to the Court of Chancery for relief against a legal liability, but which at law could not have been pleaded in bar. (Dobson v. Pearce, 2 Kern. R., 1668.)
This whole subject was fuUy examined in this court in the case of Phillips v. Gorham (17 N. Y, 270), in which it was held, in an action for the recovery of the possession of land, that the plaintiff could attack a deed under which the defendant claimed title, both upon legal grounds and upon such as before the Code were of purely equitable cognizance.
The answer, in the case of Phillips v. Gorham, claimed title by deed from William Phillips, the ancestor of the plaintiff. There was a reply to the answer (then permitted by the Code), which set up that WHliam Phillips, the ancestor, was of unsound mind when he executed the deed, and that it was fraudulently obtained by threats and other improper influences operating on his impaired inteHect.
The objection was taken at the trial that the plaintiff was not entitled to avoid the deed for fraud or undue influence, but should have procured a judgment declaring it void, in an action for that purpose, before bringing the action to recover possession of the land.
The plaintiff had a judgment and verdict, notwithstanding the objection; and on appeal to this court that judgment was *201 affirmed, and the principles of equity and law combined on the trial of that action were fully upheld.' It is unnecessary to travel over the same ground now at any greater length.
The case of Dobson v. Pearce (supra) was referred to as invoking the same principle, and was approved.
These references sufficiently show that the plaintiff in this action might lawfully establish upon the trial any ground of avoidance, whether of a legal or equitable nature, against the technical rule insisted on by the defendant, that there had been an extinguishment of the rent charge. She was not obliged by her pleadings to anticipate that the defendant would deny her claim for rent, or set up that it was extinguished ; nor was she required to resort to a prior action in equity to have her rent charge declared to be an existing estate.
Was there an avoidance of the technical extinguishment of the rent by the union of the two estates in Doctor Clarke, by competent evidence of his intention that it should not be extinguished ?
The judge at the trial has found that it was not intended that the two estates should merge, and that there was no merger. The term “merge” is not used with strict accuracy, inasmuch as the estate in the rent charge and that in the land are of equal degree, and estates of equal degree do not merge. (Bouvier’s Law Dic., tit., Merger.)
There is a unity of possession where two estates of equal degree meet, or are combined in the same person.
The meaning is, however, substantially the same, whether the result be called a merger or an extinguishment; and as applied by the learned justice, at special term, cannot be misunderstood. It is equally comprehended, whether he says that there was no intent to merge, or no intent to extinguish, the rent. The term merger was probably used in its common acceptation, in this instance.
The master’s deed to Doctor Clarke was in the usual form, and would have- conveyed a fee if the mortgagor had possessed one. It conveyed, in fact, only such an estate as Risley Taylor owned; that, we have seen, was subject to the payment of an annual rent. There was then an unity of possession in *202 Doctor Clarke of. the fee of the rent charge and of the land, ■ and the rent became thereby extinguished, unless it was his intention that it should be kept alive.
Doctor Clarke conveyed the same estate to the widow of Bisley Taylor very shortly after he had acquired it, by a quitclaim deed in which it is stated that he conveys as fully and amply as he had received the title by the deed from the master, to which an express reference is made. While it is true that these deeds are sufficient to pass a clear and unencumbered title to the land in fee simple, they are not inconsistent with a different intention, if it can be shown by legal evidence that such different intention actually existed.
The objection much relied on by the defendant arises from. the statute which provides “ that every grant of real estate, or any interest of the grantor, unless the intent to pass a less estate or interest shall appear, by express terms, or be necessarily implied in the terms of such grant.” (1 R. S., 748.)
All the estate of Doctor Clarke is deemed to have passed by the grant. (Nicoll v. The New York and Erie R. R. Company, 12 N. Y., 2 Kern., 129.)
The deed from Mrs. Taylor, made in March, 1832, about four months only after she had received the title by the deed from Doctor Clarke, conveying the premises to Selah Hart, incorporated the lease from Harmon Livingston to Bisley Taylor by a reference to and recital of it; and declared that the premises were subject to the rent and covenants of the original lease. All the subsequent deeds to John H. White contain the same recital of the lease and statement that the premises are subject to the rents and covenants therein contained.
The consideration expressed in the master’s deed to Doctor Clarke is $960, and the deed from him to Mrs. Taylor is for the consideration of $990, while in the short time of about four months she conveyed, for the consideration of $2,500, to Selah Hart.
The statements and recitals of Mrs. Taylor’s deed are clear admissions of the highest grade of evidence that the rent charge had not been previously extinguished.
It was an admission that affected the value of the premises, unfavorably reduced the price, and entered into the considera *203 tion paid by the purchaser. It would not have been made, according to the usual motives of human action, unless it had been in accordance with the existing actual fact.
We shall give due force and effect to the admission contained in Mrs. Taylor’s deed only, by holding that the omission to limit the estate granted by the deed from Doctor Clarke to her so as to continue and preserve the rent charge by express language, was the result of accident or mistake.
The statute relied on by the defendant creates no bar to the reformation of a deed on the ground of accident or mistake. (Story’s Eq. Juris., § 156, et seq.)
The failure of a contract or deed to express the real intention of the parties, by reason of accident or mistake, also forms an exception to the rule that parol evidence shall not be admitted to vary the effect of a written instrument.
On these grounds courts of equity interfere to reform any written instrument as between the original parties, and those claiming under them in privity. (Story’s Eq. Juris., § 165 ; Carver v. Jackson, 4 Peters’ R. 1, 83.)
The deed of Mrs. Taylor, and also that from Selah Hart, her grantee, were recorded long before White had acquired the title, and in the deeds of both Mrs. Taylor and Selah Hart the lease is recited and the premises are stated to be subject to the rents and covenants thereof. White acquired title in 1852 under a master’s deed on a foreclosure sale of mortgage made by Nelson Hart, the grantor of Selah Hart. He also received a conveyance of the same land subsequently from Nelson Hart, in which the lease is recited.
White was thus in privity of estate, and was bound by the admissions of the former owners. The title and they bind those who succeed them in the estate. (1 Greenleaf’s Ev., §§ 189, 190.) Like the case of a prior mortgage, the grantee and his assigns are estopped by the admission in the deed from denying its existence. (Wright, J., Horton v. Davis, 26 N.Y., 495; Jumel v. Jumel, 7 Paige, 591.)
The judgment of the special term was correct and should be affirmed; and that of the general term reversed with costs.