PRICE v. RICHMOND, &c., RAILROAD COMPANY.

1. NON-SUIT—MASTER AND SERVANT—APPLIANCES.—In action against a railroad company for the negligent killing of one of its employees, a non-suit was properly refused, there being some evidence that the death resulted from the use by the railroad of a coupling pin which was too tight for removal at the proper moment.

2. EVIDENCE—EXPERTS.—A brakeman, who has, for several years, observed the make-up of freight trains in the depot yard, is a competent witness as to the respective duties of the conductor of the train, and other servants of the company, in making up the train and moving it off.

3. EVIDENCE—PRINTED RULES.—It is not proper to ask a witness on the stand whether a sentence read to him is a rule of the defendant company; the rule itself is the best evidence.

4. EVIDENCE—STRIKING OUT ANSWER.—A witness for plaintiff was asked by

plaintiff's counsel if he had ever seen an accident from a "flying switch." The witness said he had never seen one, but had heard of one. He was then asked if he had ever heard of an accident from "roping in." Objection being made, the question was not pressed, and then plaintiff's counsel moved to strike out so much of what the witness had stated as was hearsay. *Held,* that there was no error in granting this motion.

5. EVIDENCE—EXPERTS—RAILROADS.—A witness who has had experience in railroading, though no longer so employed, may testify as an expert as to the usual mode of making up freight trains, the respective duties of the yard force and trainmen, and as to the manner of switching off cars into a one-end siding.

6. IBID.—A time table of 1891 and its rules are not competent evidence to prove that a bulletin order of 1887 was printed in the time tables of previous years.

7. REPLY—FRAUD—LEGAL ACTION.—Plaintiff brought action against a railroad company to recover damages for the negligent killing of plaintiff's intestate by the defendant. Defendant set up in bar a release executed by intestate after the injury had been received. *Held,* that there being no counter-claim, a reply was not proper, and plaintiff could, without reply, introduce evidence to show that the release was void, for incapacity, imposition, &c.

8. IBID.—IBID.—IBID.—The issue arising under a plea of fraud, relied upon by plaintiff to invalidate a release set up in defendant's answer as a bar to plaintiff's purely legal action, was properly tried on the law side of the court, together with the other legal issues involved.

9. EQUITABLE ISSUES—WAIVER.—Error cannot be imputed to the Circuit Judge in not deciding separately an issue arising under an equitable defence to a legal action, where he was not asked to do so, and no objection to such failure on his part was raised on motion for new trial or by exceptions—particularly so, when, in refusing a motion for a new trial, the judge clearly indicated a judgment of concurrence with the verdict upon such issue.

10. EVIDENCE—SANITY—FRAUD—DECLARATIONS.—Under an issue as to intestate's sanity, and fraud in obtaining from him a release, an exception, alleging error in permitting plaintiff to testify to the financial condition of her intestate, and to his declarations as to the execution of the release, which was being demanded of him, overruled.

11. OPINION BY NON-EXPERT.—A non-expert witness, after narrating the facts, may state his opinion, based upon such facts, as to the health and mental condition of the deceased at that time.

12. OPINION BY EXPERTS.—An expert witness may say what is insanity, and what is its causes, and from facts, hypothetically stated, he may draw his conclusions.

13. MASTER AND SERVANT—APPLIANCES.—A master must provide suitable and

proper appliances, for the conduct of his business by his servants, with a reasonable degree of safety to life and security against injury.

14. CHARGING JURIES—FACTS.—Exception cannot be predicated upon a failure to charge in the language of a request that which was substantially charged; nor upon a failure to charge that which included an opinion upon a fact at issue.

15. PROXIMATE CAUSE.—A judge may charge the jury as to what is proximate cause, but he may not say what facts would constitute it. There was no error in the charge in this case on the doctrine of proximate cause.

16. CHARGING JURIES—NEGLIGENCE.—A judge may not charge the jury that facts at issue, if found by them, will constitute negligence.

17. UNDUE INFLUENCE.—A definition of undue influence, given by the judge in response to a question from a juror, *held* to be short and pointed, but to furnish no ground for a new trial.

18. NEW TRIAL—APPEAL.—This court cannot consider an appeal from an order of a Circuit Judge refusing a new trial on the facts.

Before ALDRICH, J., Richland, October, 1891.

This was an action by Emma W. Price, as administratrix of Philip H. Price, deceased, against the Richmond and Danville Railroad Company, commenced August 30, 1888. The action was brought to recover damages for the negligent killing by defendant of the intestate, who, as a freight conductor on one of the roads operated by defendant, and while engaged in his duties as such, received injuries on February 18, 1887, from which he died in the November following.

Intestate ordered some cars to be thrown into a one-end siding by a flying switch, he taking a position at the brakes on the top of the cars to be thrown in; the coupling pin connecting these cars to the engine being too tight for the train hand to remove at the proper instant, the cars followed the engine on the main line, and intestate was struck on the back of his head by the overhanging roof of the depot platform. In the month of August afterwards he executed a release to defendant from all demands on account of this injury. See *Price* v. *Railroad Company*, 33 S. C., 556.

While William Woods, a witness for plaintiff, was on the stand, he was asked by plaintiff's counsel if he had "ever seen an injury from a flying switch?" Witness answered: "No,

sir; I have never seen it, but heard talk of it." Q. "Did you ever hear any talk of the other?" A. "No, sir." Q. "Ever hear any talk of a pillar being broken out of the platform at Alston by roping?" Objection being made, plaintiff's counsel moved that the answer as to hearing of an injury from a flying switch be stricken out; and this motion was granted.

Defendant having proved by his witness that bulletin orders were kept on the bulletin board until printed in the rule book, or on time tables, offered a time table of 1891, to show that the bulletin order in question [prohibiting flying switches] was afterwards put on the time table, and thus disappeared from the bulletin board. Objection being made, the judge ruled: "Granting that it is now in the schedule since then, what bearing would it have on the transaction back in 1887? I don't think it admissible. I exclude that particular paper published in 1891. I don't rule that I would not admit one, if you can produce the time table of 1887 or contemporaneous with the act."

Verdict was for plaintiff, and defendant appealed.

*Mr. B. L. Abney*, for appellant.

*Messrs. Melton & Melton* and *R. W. Shand*, contra.

May 11, 1893. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action brought by the plaintiff, as administratrix of Philip H. Price, her late husband, to recover compensation in damages for the killing of her husband, the intestate, by the alleged fault of the defendant company, under the provisions of the act of 1859, now incorporated in the General Statutes as sections 2183–2186.

The case has been in this court before. See *Price* v. *Railroad Company*, 33 S. C., 557, where the general facts will be found. It there appears that on February 18, 1887, Philip H. Price, the conductor of a freight train on the Columbia and Greenville Railroad (then operated by the defendant company), received a blow upon his head from the projecting roof of a shed at Alston, while he was standing on the top of his train in

motion and engaged in putting on brakes. From the effects of this blow he died in the November following. In February, 1888, his widow took out letters of administration upon his estate, and instituted this action as such administratrix for the benefit of herself and the only child of intestate, claiming $20,000 damages for the negligent killing of intestate. The defendant company, after denying all allegations of negligence, made further defence that, after the alleged injury, and before the commencement of the action, the said intestate, for the consideration of $320, executed a paper acknowledging satisfaction for all damages resulting from the alleged injury, and relieving the defendant company from all liability therefor. (Copy of this paper appears in the report of the case above stated.)

After the plaintiff had closed her testimony in chief, the defendant company moved for a non-suit, upon the ground that there was no evidence of negligence to go to the jury, but the motion was refused. The company then went into its defence, and, among other things, proposed to prove "the release" above referred to, executed by the intestate in his lifetime, set up as one of the defences in the answer, which, upon objection by the plaintiff, was held to be inadmissible. The jury found a verdict for the plaintiff for $6,976; and the defendant company appealed to this court from the judgment upon various grounds; and this court, holding that it was error in the trial judge to refuse to admit in evidence the aforesaid "release," set aside the judgment below, and ordered a new trial.

Accordingly, a new trial was had by Judge Aldrich and a jury. The defendant corporation was granted leave to amend their answer in several particulars, and, after interposing a general denial of all allegations as to negligence on their part, made answer as follows: "6. For further defence, defendant alleges that, after the time of the alleged injury, before the commencement of this action, the defendant delivered to plaintiff's intestate, P. H. Price, and the said P. H. Price received from the defendant, the sum of $320, in full release, satisfaction, and discharge of all claim for damages resulting from the alleged injury. 7. For a further defence, the defendant alleges

that the said P. H. Price received his injuries while attempting to shift the cars upon the side track at Alston in a manner prohibited by the rules of the company under which he was directed to work, and that he neglected to use the means provided by the defendant for 'shifting' its cars into the siding at such place and time, and that by reason of such violation and · neglect of the rules of the company he became injured. The defendant further alleges, that at and before the time of the accident to the said P. H. Price, he was well aware of the position of defendant's tracks, station houses, and shed at Alston, and knew the danger of attempting to pass under said shed on top of a box car, but that he, regardless of such knowledge, so negligently acted and conducted himself that he remained upon said box car while the same was passing under the overhanging roof of the shed, and thereby contributed to and caused his own injury," &c. The plaintiff put in no formal reply to this answer, but upon these pleadings the parties went to trial.

As in the first trial, upon the close of the plaintiff's direct evidence, a motion was again made for a non-suit, on the ground that there was no evidence of negligence to go to the jury, but the motion was refused; and the defendant corporation proceeded to offer their evidence, including the said "release," which, in accordance with the previous decision of this court, was held to be competent and admissible in evidence. The counsel for plaintiff claimed the right to attack the release, although in evidence, upon the grounds "that at the time it was signed by the intestate he was *non compos mentis*—incapable of making a contract—that the consideration of the alleged contract was wholly inadequate—coupled with mental and moral weakness—superinduced by undue influence, arising from physical distress, pecuniary necessity, inequality of position—*in vinculis*, as the law terms it." While it was contended by the counsel for the defendant "that this 'release' discharge has been pleaded in bar to the action, no reply was made to it, and, therefore, it comes before the court as simply with a general denial. The purpose that has been disclosed by counsel is to avoid the release and discharge, on the ground that it was procured and obtained under such cir-

cumstances and in such way that good faith and good con-
science ought not to permit it to stand. This is a matter pecu-
liarly applicable to the equitable powers of this court. They
admit, in what counsel has suggested to the court, that this
release was properly executed, and that it is the act and deed
of the party, but that it ought to estop—stand in the way of—
the party himself or his representatives. Now in this way
their claim of damages come, that it was obtained under such
circumstances and under such inducement as would operate as
a fraud upon his right. That is within the peculiar jurisdic-
tion of the court'' (of equity, as we suppose).

The court ruled as follows: "This is an action at law. You
put this in your answer—set up this release as a bar. The
Code provides that the pleadings shall end at the answer,
except as to new matter and especial provision brought out.
That means a general denial; to be presumed that all matters
in the answers are denied. Then the question as to the valid-
ity of that release would come up naturally under the denial
provided for in the Code, the general denial supposed to be
interposed by plaintiff to any matter set up in the answer,
because a special reply is only required in cases of counter-
claim, and the special provisions provided in the Code.
Therefore, I think, under the statement of counsel, that his
denial of the validity of the release will be an important point
in the progress of the case. I think any evidence that is rela-
tive to the question as to the validity or invalidity of that
release or discharge is competent," &c. He asked the counsel
for the plaintiff if they set up *non compos mentis;* and being
answered in the affirmative, he said: "Then go on under that
promise. If you don't do it, I will strike it out."

The defendant company put the release in evidence, under
the former decision of this court. The plaintiff denied its
validity upon the grounds indicated, and upon that point the
defendant was allowed the reply in evidence. A volume of
testimony was then offered upon the subject, consisting largely
of a long correspondence between the authorities of the railroad
company and the intestate. There were requests to charge;

some of which were charged, others in part, and still others were refused.    The jury found for the plaintiff $5,500.

The defendant made a motion for a new trial on the minutes, upon the following grounds: "(1) Because the verdict was against the manifest weight of the testimony; (2) because the verdict was against the overwhelming weight of the testimony; (3) because the verdict was against the law and the charge of the judge; (4) because the jury disregarded the charge of the judge; and (5) because the evidence was not sufficient to support the verdict," &c.  The judge refused the motion for a new trial, saying, among other things: "The question comes up, and right there is where the case turns: Was that pin the proximate cause of the death of Mr. Price?  Now, the testimony is, that he was on the top of the train handling the brakes, and there was testimony to go to the jury, that Price was working at this brake when he was struck.  According to the evidence, the train could not have been stopped unless the brakes were applied.  It is true, that Price assumed the risk of the overhanging bridge, or waived his right to demand its removal.  If the failure to uncouple the cars was of such a character as to contribute as the immediate cause—the proximate cause—of his death, then the railroad company would be liable.  In the case of *Carter* v. *Oil Mills Co.*, the Supreme Court say, as Carter had to reach for the sacks and pull the 'former,' which required the operation to be done rapidly, the jury had the right to consider the rapidity with which these matters had to be done.  Now, here, Mr. Price, in this case, had to put these brakes on, and put them on quickly, and the brakeman had to uncouple the car.  Now, which was the proximate cause, then, of his death?  We know that the immediate cause was the striking of his head; but was that the cause of his death?  I submitted that to the jury as clearly as I could.  Two juries have said by their verdicts that it was due to negligence of the railroad company.  I cannot say, therefore, that this case is against the weight of the testimony; and I must remember, also, that a great deal of testimony, nearly all the testimony for the plaintiff, was by positive eye-witnesses, who did not swear to what general rules were, and general customs,

but who swore to what actually took place.   A great part of the testimony for the defendant was on abstract propositions of customs, general rules, &c.   It was for the jury to judge.

"Now, then, as to the release.   I charged the law pretty much as the defendant's counsel requested.   There is no doubt in my mind that Mr. Price's health physically was wrecked, showing that his constitution was impaired, and that he gradually met death from the cause that was lingering there, undermining his constitution all the time.   When a man is in bad health—weak, sick, and distressed—you can't say that his mind is as sound and strong as it was when he was in health; that is a physical impossibility for a man injured as Price was, for him to have his mind as clear and as bright as it was before.   We know that, but still we know that a man may be injured severely about his head, temporarily unconscious, or sick, or mind unbalanced, yet at lucid moments may be capable of making a contract.   In this case I let pretty much all the evidence out; I let the whole facts come out to the jury, and I left it with them to say whether the intestate had sufficient capacity to act as a man would, who was capable of making a contract. I charged them, also, as to undue influence, and the matters requested of me.

"The testimony was that Mr. Price was a physical wreck, as I have said; the railroad company knew of his condition.   He was treated by their physician, his condition was made manifest to them in his letters, and in which he told of the abject want which he and his family were in; and while no one has supposed for a moment that the railroad company were doing any thing else than from a strict business point of view, still that fact, and the question of inadequacy of consideration, were allowed to go to the jury as a badge, or of the mind so far weakened and debilitated as to be incapable of acting with deliberation or forming a judgment as to a transaction, which would in law bind them, if he entered into such transaction, &c.   Counsel for plaintiff will prepare an order refusing a motion for a new trial."

Whereupon the defendant appeals to this court upon numerous exceptions in the Brief (thirty-six in number, with various

subdivisions), charging error in refusing a non-suit; in rulings upon points of evidence, in charges and refusals to charge on the law of evidence, and refusal of motion for a new trial, &c. The exceptions are not only numerous, but long and argumentative, so that it is impossible, within proper compass, to consider them "*seriatim;*" but we will endeavor to do so in what seems to be the natural order adopted by the counsel in their arguments here.

Exception 6 complains of the ruling of the judge in refusing the motion for non-suit, upon the grounds submitted to him, which were as follows: "Because the evidence introduced by the plaintiff has not disclosed any act of negligence on the part of the defendant; or if so, it was not a proximate cause of the injury, and that the cause of his death, if attributable to any thing, was attributable to his own negligence—not to his contributory negligence, but to his own negligence; that the accident really arose out of a risk that he had assumed, and which was incident to his employment as conductor on the train."

This court has had occasion so often lately to consider what will make a non-suit proper, that we really do not think that it is necessary to go again into the subject in this case.

In the late case of *Carter v. Oliver Oil Company*, 34 S. C., 211, the leading rule upon the subject was announced as follows: "Whether facts are sufficient to prove negligence is for the jury. A *non-suit* is proper *only* when there are no facts tending to prove the charge. Contributory negligence is a matter of defence, which can not be considered under a motion for non-suit." We can not say that there was no evidence in this case tending to show negligence on the part of the defendant. "The rule is notoriously well settled, that it is the duty of the master to furnish safe and suitable appliances for the performance of the work required of the servant, and also to see that the same are kept in proper repair; and hence when either of these duties has not been performed, there is an omission of duty on the part of the master," &c. We concur with the Circuit Judge, that, as the flying switch was not made, that could not be a cause in producing the death. But it appeared that they failed to uncouple the train at the moment

required, because the coupling pin was so tight it could not be removed, and it was claimed that that was a cause of the injury inflicted. We can not say that there was error in refusing a non-suit upon the grounds stated.

Exception 1 objects to the ruling of the judge in allowing William Woods, a witness, to testify as to whose business and duty it was to make up the trains, and as to what conductors generally do when trains are turned over to them. The witness was a trainman, and had been for many years in the employment of the defendant company. We do not see why a person habitually in the yard of the company, and knowing from personal observation what was done there, might not testify as to the "make-up" of the trains there.

Exception 2 complains that it was error to refuse to allow the same witness to answer this question, viz.: "Do you know whether this is a rule of the railroad company or not (reading), 'uncoupling of cars, and placing couplings in draw bars, while the train is in motion, are prohibited?'" If there was such a rule, we agree with the judge, that the rule itself was the best evidence.

Exception 3 charges error on the part of the judge, in striking out the answer of the witness, William Woods, to plaintiff's counsel, that he had never seen an accident by the "flying switch," but had heard talk of it, the same not being objected to by either party at the time the answer was given. So much of the answer as was admitted to be "hearsay" was clearly incompetent, and, besides, was not responsive to the question asked him. We do not think it was error in the judge to strike it out on motion, soon after it fell from the witness, and before he left the stand.

Exception 4 complains that the judge allowed the witness Davis to state how freight trains were "made up on defendant's roads, when the duty of the yard master ceases and the conductors' commences, and when cars are to be put in one-end sidings, how it is done." Davis, some time before, had been a freight conductor on the road for three years. The judge held that, as to railroading he had

14—38

skilled knowledge, and upon that subject alone heard him as an expert, and we can not say that was error. We make the same observation as to the same witness in reference to the subject of "switching," contained in exception 5.[1]

Exception 7 complains of error on the part of the judge in refusing to allow defendant to introduce the time table of defendant company, showing that the "bulletin order" prohibiting the "flying switch" had been put in the "time table," in accordance with the practice of the company, and the same was identical in terms with the "bulletin order." The judge held the testimony irrelevant, and we can not say that was error.

Exceptions 8, 9, 10, 12, 13, 15, 21, 22, 23, 33, and 34 deny the right of the plaintiff to controvert in a court of law, and in this action, the validity of the release set up by the defendant, as a bar to her recovery. The exceptions are so long and argumentative that they cannot be given here. But, as far as we understand, the objections may be considered under the following heads:

(1) It is denied that the evidence to invalidate the release for incapacity, imposition, duress, &c., was admissible at all under the pleadings, for the reason that there was no replication in writing by the plaintiff. The issue made by the pleadings was this: After the plaintiff had offered her direct testimony for damages, the defendant set up the release in bar. The plaintiff made no reply in writing, but gave full notice that she proposed to impeach the validity of the release upon the grounds above indicated. We agree with the Circuit Judge, that the testimony was not inadmissible, for the reason that there was no written replication of incapacity, fraud, &c. Under the Code, no reply to an answer is necessary unless it sets up a counter-claim. The defendant company probably might have required a reply to the new matter of the release, but they did not do so. Code, § 174. Not being

[1] "5. Excepts to the ruling of the presiding judge in allowing the same witness, over the defendant's objection, to testify which one of the two modes [of switching] was more usually practiced [at time of accident], and which the more dangerous."

required to file a reply, the plaintiff was entitled to prove any matter in denial or avoidance of the new matter set up in the answer. In relation to this point, the Code of this State is identical with that of New York. See *Dambman* v. *Schulting*, 4 Hun., 50; *Sheehan* v. *Hamilton*, 2 Keyes, 304; *Phillips* v. *Garham*, 17 N. Y., 270.

(2) But, as we understand, it seems to be further contended that the alleged invalidity of the release, upon the grounds stated, being equitable in character, could not be properly considered in this case, which is purely a law case for damages, but should have been referred to some "independent proceeding in equity," and, as we suppose, that further progress in this action should have been stayed until said "independent proceeding" decided the matter. We can not accept this view. There was no motion to make two cases, and refer the question as to the validity of the release to an independent proceeding. The Code requires the same court to administer both law and equity, although the essential principles of equity, and, to some extent, the modes of trial, are still retained. Was the issue made by the claim of the plaintiff, charging want of mental capacity, fraud, &c., so exclusively the subject of equity jurisdiction, that, arising in the progress of a law case, it could not be tried along with the other issues on that side of the court? As we understand it, one of the main purposes of the Code was that all controversies respecting the same subject matter of litigation should be determined in one action, and that the provisions of the Code are adapted to give effect to that intent. There certainly are certain issues which may be tried on either side of the court, and among them is fraud in all its forms, and, as I suppose also, want of mental capacity, duress, undue influence, &c., to such extent as to make an instrument absolutely void. In the case from 4 Hun. (N. Y.), *supra*, after full consideration, it was held: "That fraud invalidates all instruments, however solemn; and the effect of a release pleaded in an answer to an action prosecuted for the debt (damages) may be avoided by proof that it was fraudulently procured." See *McCord* v. *McCord*, 3 S. C.,

577, where, in a law case, a deed set up by defendant was shown to be fraudulent and void.

(3) If, however, the issue made by the claim of the plaintiff was so purely equitable as that, it could only be heard by the judge sitting as chancellor, no such claim was made either in the progress of the trial, in the motion for a new trial, or in any of the numerous exceptions; and it would seem that the matter comes too late to appear for the first time in the argument here. But we may say, that, at all events, the defendant received no detriment, for, practically, the judge did hear the whole case. He certainly had the right to refer the matter to the jury, at least, to enlighten his conscience; and upon the motion for a new trial he considered the matter fully, and in refusing the motion really delivered his judgment, concurring with the jury.

Exceptions 14 and 15 charge error in allowing the plaintiff to testify as to the financial condition of the intestate Price during his illness, and that she had heard him say several times that he never would sign the "release;" that "he needed his salary, but that he would starve before he would sign the release." This objection to the evidence has already been practically disposed of in connection with the correspondence of the intestate with the railroad authorities, and other evidence upon the subject of the alleged duress and undue influence. See *Means* v. *Means*, 5 Strob., 167.

Exceptions 16, 17, and 18 charge error in allowing the answers of a witness, B. G. Price, examined by commission, as to the state of health and the mental condition of the intestate about the time he signed the release. The witness was not an expert, but a brother, and knew him well. The course pursued in the examination was to ask him the facts within his own knowledge, and then to follow with the question, "From the facts stated by you, what was your opinion, if you had any, as to the health and mental condition of Capt. Price, the intestate?" In every instance, the witness was required first to state the facts on which his testimony was based. "A witness has been permitted to testify that a certain person was insane, drunk, or otherwise, after stating the facts on

which he based his opinion. *Seibels* v. *Blackwell*, 1 McMull., 56; *Means* v. *Means*, 5 Strob., 167; *Hart* v. *R. R. Co.*, 33 S. C., 427; Abb. Tr. Evid., 734.

Exceptions 19 and 20 relate to the testimony of Dr. A. N. Talley, a medical expert, as to the condition of Price's mind at or about the time he signed the release. The objection is to the "manner of the introduction and admissibility of the testimony of Dr. A. N. Talley." The exceptions are too long to copy, some of them being merely abstracts from the record, covering four printed pages of the account of the examination. It is impossible to gather the exact point intended to be made; but it does appear that, after much discussion at the bar, the judge ruled as follows: "If the witness testifies as an expert, the sense of the rule would seem to indicate that the jury ought to know upon what he gives his opinion as an expert. After all, they are the judges of the facts. He can state what is insanity or what causes insanity; but he must assume hypothetical facts when he tells the jury his conclusions." This was according to the rule stated in the case of *State* v. *Coleman*, 20 S. C., 441, and we cannot say that it was erroneous.

Exception 24 complains of error in modifying the defendant's second request to charge as follows: "2. Every corporation has the right to carry on its business, which is dangerous, either in itself or in the manner of conducting it, if it is not unlawful and interferes with no rights of others, and is not liable to one of its servants, who is capable of contracting for himself, and knows the danger attending the business, and the manner in which it is conducted, for an injury received therefrom." The judge charged this request, which was correct as far as it went; but he modified it by stating that "the master must adopt and use such machinery, apparatus, appliances, tools and means as are suitable and proper for the prosecution of the business in which the servants are engaged, with a reasonable degree of safety to life and security against injury." We think the modification was right, according to the cases of Gunter and Lasure, in 18 S. C. Reports, 262, 275.

Exceptions 25 and 26 complain that the judge did not charge

defendant's third and fourth requests.   He did not in express terms, but we think he did charge substantially as requested, and also as to the seventh request.   Exception 27 complains that the judge refused the defendant's ninth request, which is very long, and the judge said he refused it, "because it carried him upon the facts."

Exceptions 28 and 29 object to what the judge said about proximate cause.   He could tell the jury what was proximate cause, but he could not charge that any given state of facts would or would not be proximate cause.   We do not think it was error on the part of the judge to modify the ninth and tenth requests by saying: "I charge you that if the tightness of the coupling pin in there had nothing to do with it, or was not the proximate cause—that is, the immediate cause, or one of the necessary causes of the accident—and that accident would have happened without this thing, or it had no influence in bringing it about, why, then, the question of tightness would pass out of it."

Exceptions 29, 31, and 32 were abandoned at the argument, and 33 and 34 are too general to be considered.   And, even if they were not so, the points raised thereby have been fully considered and disposed of in other portions of this opinion.

Exception 30 complains that the judge, after charging defendant's fourteenth request, which was as follows: "If the jury believe, from the testimony, that the defendant's track, depot, and station structure appurtenant thereto, at Alston, were kept and maintained in the same condition, proximity and position as they were kept and maintained at the time Price entered its employment, and were the same at the time of the accident as at the commencement of his service as freight conductor; and if they further believe, from the testimony, that Price, at and before his entering the service of the defendant as a freight conductor, knew of the condition, proximity and position of the platform and shed at Alston, and the condition and location of the defendant's railroad tracks at said place, and with such knowledge engaged service with the defendant as a freight conductor, such continued maintenance of the track, platform and shed at Alston—

it was not negligence on the part of the defendant railroad company, and the plaintiff can not recover for an injury received by Price while in the performance of his duties as freight conductor, from such keeping and maintenance of said track, platform and shed, in the absence of any objection thereto on his part"—afterwards charged the jury as follows: "Now, gentlemen, I will charge you that—striking out with reference to negligence." We think this modification of the charge was necessary and proper.

Exception 35, "because the presiding judge gave an incorrect definition of what 'undue influence' is, to wit: 'Undue influence means that, where a person influences a man against his will, or by resorting to means and methods to overcome his will, and to get him to do that which he might not do, and probably would not do,' and that the same misled the jury." After the jury had been charged, and gone to their room, they returned into court and wished further instruction as to the release, and especially whether, outside of insanity, there was any thing else that would make it invalid. The complaint is, that the judge erred in his response. His supplemental charge is entirely too long to be inserted here. It was full and clear, and, taken as a whole, we think, was unobjectionable. He read from the case of *Banker* v. *Hendricks*, 24 S. C., 1, what the Supreme Court had said upon the subject. A juryman asked the judge to explain what "undue influence" was, and he replied as follows: "Influence brought to bear by others, and is a term used in contradistinction to proper influence; for instance, would be the influence meant to be exerted upon the mind of Capt. Price. Undue influence means, that where a person influences a man against his will, or by resorting to means and methods to overcome his will to get him to do that which he might not do, and probably would not do." The definition was, under the circumstances, necessarily short and pointed, but we can not say that it was erroneous.

Exception 36, the last, complains that the judge committed error in refusing to grant a new trial. The motion was made on five grounds: (1) because the verdict was against the manifest weight of the testimony; (2) because the ver-

dict was against the overwhelming weight of the testimony; (3) because the verdict was against the law and charge of the presiding judge; (4) because the jury disregarded the charge of the presiding judge; and (5) because the evidence was insufficient to support the verdict.'' It is perfectly well settled that this court can not consider an appeal from an order of a Circuit Judge, refusing a new trial on the facts. The grounds urged here for a new trial present only questions of fact, except, perhaps, the third and fourth. As to these two grounds, in view of the foregoing discussion, as to the principles of law laid down to the jury by the Circuit Judge correctly as we have concluded, we deem it only necessary to say, that we are unable to perceive wherein the jury disregarded the law, as charged by the judge.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.[1]

---

[1]This completes the cases of April Term, 1892.—REPORTER.